**UNITED STATES of America, Plaintiff,**

v.

**Kent S. ROBINSON, Defendant.**

**Criminal Case No. 09–00031.**

United States District Court, Northern Mariana Islands.

May 11, 2010.

Eric S. O'Malley, U.S. Department of Justice, Saipan, MP, for Plaintiff.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S REQUEST TO SUPPLEMENT THE RECORD

MARK W. BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1068
 A. Indictment And Detention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1068
 1. Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1068
 2. Initial appearance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1069
 3. First arraignment proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1070
 4. Second arraignment proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1071
 5. Hearing on revocation of detention order . . . . . . . . . . . . . . . . . . . . . . .1072
 B. The Motion To Supplement The Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1078
 1. Grounds for the motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1078
 2. The proffered supplemental facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1078

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1080
 A. "Supplementation" Of The Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1080
 1. Standards for "supplementation" of the record . . . . . . . . . . . . . . . . . . .1080
 2. Whether supplementation is appropriate . . . . . . . . . . . . . . . . . . . . . . . .1081
 3. The effect of the supplemental information . . . . . . . . . . . . . . . . . . . . . .1082
 B. "Correction" Of Findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1083
 1. Standards for "correction" or reconsideration . . . . . . . . . . . . . . . . . . .1083
 2. Whether any correction is required . . . . . . . . . . . . . . . . . . . . . . . . . . . .1084
 a. The Bail Reform Act's requirements . . . . . . . . . . . . . . . . . . . . . . . .1084
 b. The failure to satisfy § 3142 requirements . . . . . . . . . . . . . . . . . . .1086
 i. The "detention hearing" requirement . . . . . . . . . . . . . . . . . . . .1086
 ii. The "timeliness" requirement . . . . . . . . . . . . . . . . . . . . . . . . . . .1088

 *iii.* The *"written order" requirement* . . . . . . . . . . . . . . . . . . . . . . . . . . . 1089
 *c.* **Why the onus was on the prosecution** . . . . . . . . . . . . . . . . . . . . . . . . 1089

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1091

This criminal case comes before me, as a visiting judge,[1] on the prosecution's request to supplement the record concerning the prosecution's efforts to comply with the requirements of 18 U.S.C. § 3142 for the detention of the *pro se* defendant. Although the prosecution's request to supplement the record will be granted, the prosecution's request that I correct the record—and reconsider comments that I made about the prosecution's handling of the matter during a proper detention hearing—meet with considerably less favor.

## I. INTRODUCTION

### A. Indictment And Detention

#### 1. Charges

In an Indictment (docket no. 1) handed down December 10, 2009, defendant Kent Sebastian Robinson was charged with offenses arising from his alleged making and possessing of a counterfeited and forged document, namely, a Secured Funding and Offset Bond (Offset Bond), purportedly registered with the United States Department of Treasury with the number RA 153–081–658 US, which declared its value to be $200 million dollars, paid to the order of the Oceania Insurance Corporation (Oceania), a company registered and doing business in the Commonwealth of the Northern Mariana Islands (CNMI), and which falsely purported to be, *inter alia*, offset by a "deposit private offset with the U.S. Department of Treasury." Indictment, ¶ 1. On or about December 18, 2008, Robinson allegedly sent, or caused to be sent via interstate commercial carrier, the Offset Bond to Oceania in the CMNI, whereupon it was submitted to the CNMI Insurance Commissioner in furtherance of an alleged fraud upon that agency. *Id.* at ¶ 2.

The specific charges arising from these circumstances are the following:

**Count 1** charges Robinson with fraudulent uttering of a private security. More specifically, **Count 1** charges that, on or about December 19, 2008, defendant Robinson, in the District of Columbia and the District of the Northern Mariana Islands, made, uttered, and possessed a counterfeit and forged security of an organization, with the intent to deceive another person, organization, or government, specifically, by making, uttering, and possessing the counterfeited Offset Bond, with the intent to deceive another person, Oceania and the government of the CNMI, in violation of 18 U.S.C. §§ 513(a) and 2.

**Count 2** charges Robinson with making and uttering a fictitious obligation. More specifically, **Count 2** charges that, on or about December 19, 2008, defendant Robinson, in the District of Columbia and the District of the Northern Mariana Islands, produced and otherwise made, or caused to be made, and did pass, utter, offer, broker, and issue, or caused the same, with the intent to defraud, and utilized interstate commerce to transfer a false or fictitious instrument appearing, representing, or purporting to be an actual security or other financial instrument issued under

---

1. Chief United States District Court Judge Alex R. Munson of the District of the Northern Mariana Islands stepped down as an active judge on February 28, 2010, and is now a senior judge. Like several other United States District Court judges from around the nation, I sat as a visiting judge in Saipan—in my case, for two weeks in mid-April—to assist with the timely processing of court business until a successor to Chief Judge Munson is appointed.

the authority of the United States, in violation of 18 U.S.C. §§ 514(b) and 2.

**Count 3** charges Robinson with mail fraud. More specifically, **Count 3** charges that, on or about December 19, 2008, in the District of Columbia and the District of the Northern Mariana Islands, having devised a scheme and artifice to defraud, and for the purpose of obtaining money or property by means of false or fraudulent pretenses and representations, delivered the Offset Bond or caused it to be delivered by a commercial interstate carrier according to the direction thereon to the District of the Northern Mariana Islands via interstate commercial carrier in violation of 18 U.S.C. §§ 1341 and 2.

Robinson was arrested on the charges in the District of Columbia and, after an identity hearing, was eventually brought to the CNMI to face the charges. Trial was originally set to begin on May 17, 2010, *see* Order (docket no. 7), but was later continued to August 9, 2010, upon a finding that time should be excluded under the Speedy Trial Act to allow defendant Robinson to prepare his defense. *See* Order (docket no. 38).

### 2. *Initial appearance*

On March 22, 2010, defendant Robinson was brought before Designated Judge David Wiseman[2] for an initial appearance. *See* Hearing Minutes (docket no. 3). There is no doubt that the proceeding was difficult, from the start, as Robinson attempted to assert his "stance" that, among other issues, he is a real man, a living man, not a corporation or conduit or go-between or surety for a corporation of the same name with which he believed that the United States intended to do business. *See* Prosecution's Request To Supplement The Record (docket no. 41), Transcript of Initial Appearance, 2–3. After determining that Robinson was indigent, that Robinson wished to represent himself, and that appointment of standby counsel was appropriate, notwithstanding Robinson's objections, the initial appearance turned to the issue of interest here, the question of bail.

At that point, the following exchange occurred:

THE COURT: Mr. [Prosecutor], what's the Government's position on bail?

[THE PROSECUTOR]: Your Honor, the defendant has absolutely no ties to this community. We believe that he is a flight risk. He's already made one motion to move this trial back to the District of Columbia. So we submit he is a flight risk and ask for no bail at this time.

THE COURT: The Court will accept that recommendation of the Government, and based on information from the Probation Officer, which reveals a history of criminal actions and dispositions that are unknown going back to 1992—

THE DEFENDANT: No convictions, sir.

THE COURT: Having a pistol without a license in '95, same thing. Receiving stolen property. '96, there's a Murder One, while armed, unknown disposition. Fugitive from justice in 1998.

2003, controlled substance and intent to distribute. In 2004, simple assault, which was dismissed.

However, in view of the foregoing, and the fact that you were brought here from D.C., the Court does deem you to be a flight risk, and we'll remand you to the custody [sic] with no bail at this time.

---

**2.** Judge Wiseman is a judge of the Commonwealth Superior Court who is also designated to serve temporarily as a judge in the District Court for the Northern Mariana Islands to aid in the proper dispatch of business of the court. *See* 48 U.S.C. § 1821(b)(2).

Transcript of March 22, 2010, Initial Appearance at 13:25–14:24. This exchange is disturbing for several reasons, not least of which is that it reveals the prosecutor's apparent ignorance of the meaning of "community ties" as that factor under 18 U.S.C. § 3142(g) of the Bail Reform Act relates to a defendant's flight risk. Twenty years ago, the Ninth Circuit Court of Appeals explained that the "community" in § 3142(g), in relation to a defendant's flight risk, "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *United States v. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990); *see also United States v. Hir,* 517 F.3d 1081, 1088 n. 4 (9th Cir.2008) (citing *Townsend* for this proposition). Thus, an exclusive focus on Robinson's lack of ties to the Saipan community misses the point, particularly where any exploration of the issue would have revealed his extensive and longstanding ties to the Washington, D.C., community. Moreover, the court did not take any evidence from either party before making its ruling and, indeed, did not allow Robinson to respond to the prosecution's argument for detention or ask him to respond to the recitation of his purported criminal history. Indeed, the court made no express finding that the burden of proof for detention as a flight risk under the statute had been met, nor was there any evidence or proffer of evidence by the prosecution that would even remotely have met that burden of proof. *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986) ("The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk."). After the discussion of other matters, the court set an arraignment for March 29, 2010. Transcript of March 22, 2010, Initial Appearance at 20:11–13.

The issue of bail arose again near the end of the initial appearance, as follows:

THE COURT: . . . . Do you have any questions about being remanded into custody, the bail, or the change of venue we discussed or the arraignment?

THE DEFENDANT: We can start with bail. One, clearly, I'm not a flight risk, because I don't own an airplane or boat. That's number one.

Two, all of the charges that were read off by the Court, these were alleged, and every one of them were proven not to be a fact. I've never been convicted of not one crime ever.

This instant matter today before the Court is a matter that is of no violent nature. It has not one instance of-or indication where the citizens of Guam or Saipan would be in any danger whatsoever.

THE COURT: And the Court is not considering the danger to the community. The Court ruled on bail on the flight risk, and that's the Court's ruling. You are a flight risk.

Let's move on. Anything else?

Transcript of March 22, 2010, Initial Appearance at 21:24–22:17. Again, this exchange is disturbing, because it also does not reveal any express finding that the burden of proof for detention as a flight risk under the statute had been met. *Winsor,* 785 F.2d at 757. After some further discussion, including Robinson's statement that "[n]othing here is by my consent," but instead was "being done under threat, duress and coercion," the initial appearance concluded. Transcript of March 22, 2010, Initial Appearance at 23:10–16.

No written detention order was filed after this hearing, nor did the prosecution request such a written order when none was forthcoming from the court.

#### 3. *First arraignment proceeding*

At the arraignment on March 29, 2010, *see* Hearing Minutes (docket no. 4), it is

fair to say that proceedings were again complicated by Robinson's representation of himself and his assertion of his "stance" concerning his status before the court. Nevertheless, the questions of detention and bail of interest here arose at only two points.

First, approximately midway through this arraignment proceeding, the following exchange occurred:

THE COURT: Mr. [Substitute Prosecutor], are we under any time constraints with respect to arraignment? Can we continue for good cause a couple of days?

[THE SUBSTITUTE PROSECUTOR]: Yes, Your Honor, we could continue this matter. The defendant is in detention right now, and it's my understanding that the Government had moved in the mainland, and also with the last appearance before Your Honor, to keep the defendant detained, and I just want to make sure that the record is clear that the Government has moved for detention and that Order has been granted, and there's no reason why the arraignment can't be postponed for a couple days.

Prosecution's Request To Supplement The Record (docket no. 41), Transcript of March 29, 2010, Arraignment (Part 1), 14:24–15:10. The court did not entertain the presentation of evidence on the detention issue, and did not then reiterate its no-bail order, but neither did Robinson protest his continued detention at this point in the proceedings.

Later in the proceedings, Robinson stated, "I'm aware that there's a no-bail Order in place," but did not then request that he be released, only that he be given access to a law library or released for periods of the day to allow him access to a law library.

**3.** The original prosecutor was accompanied

*Id.* at 23:13–24:12. The court responded, as follows:

THE COURT: As far as the Court's concerned, pretrial release matters are not before the Court at this time.

The Court maintains its no-bail Order. It does so not for any danger to the community, but to the flight risk that's inherently involved in this case.

So we're not dealing with any pretrial release modification of bail. That, you can take up and schedule through your attorney or by yourself, if you're representing yourself.

The Court will look into the—well, we'll revisit this matter again with respect to any legal research at the next hearing, because you need to talk to your attorney.

Transcript of March 29, 2010, Arraignment (Part 1) at 24:21–25:9. The hearing ended after the discussion of other matters, but without completing the arraignment, which was continued to April 1, 2010.

Again, no written detention order was filed after this hearing, nor did the prosecution request such a written order when none was forthcoming from the court.

#### 4. Second arraignment proceeding

On April 1, 2010, the second installment of Robinson's arraignment began just as awkwardly as the prior two proceedings, with Robinson attempting to assert his "stance" and announcing that he had fired appointed counsel and the court frequently cautioning Robinson that he was perilously close to being held in summary contempt. *See* Hearing Minutes (docket no. 6). The issue of bail or detention arose only near the end of the arraignment—during which the court entered not guilty pleas for Robinson—when the prosecution, again represented by the original prosecutor,[3] raised the issue, as follows:

by another Assistant United States Attorney,

[THE PROSECUTOR]: Your Honor, I just ask that the Court remand the defendant into custody, again, on the terms as they exist. We believe that he is a flight risk. He has openly stated he does not acknowledge the authority of this Court, and so there is no reason to believe that he would obey the orders if they would ask him to return to this Court under any terms or conditions, so we would ask that he remain incarcerated at this time.

THE COURT: Thank you.

Defendant is remanded back in custody.

Transcript of April 1, 2010, Arraignment (Part 2), 28:15–25. The court did not request, and the prosecution did not offer, any additional evidence to support these assertions, and the court did not offer Robinson the opportunity to respond to the prosecutor's assertions. The court also did not make any explicit findings concerning the prosecution's new or renewed grounds for denial of bail, but neither did Robinson protest his continued detention at this point in the proceedings.

Again, no written detention order was filed after this hearing, nor did the prosecution request such a written order when none was forthcoming from the court.

### 5. *Hearing on revocation of detention order*

By Order (docket no. 27), dated April 16, 2010, Designated Judge Wiseman set a hearing for April 21, 2010, on Robinson's request for an extension of time concerning his trial, which was then scheduled for May 17, 2010, and Robinson's "Waiver of Right to Speedy Trial." That hearing was assigned to me, during my sojourn in Saipan as a visiting judge to the District of the Northern Mariana Islands. On April

16, 2010, Robinson also filed a *pro se* Motion For Review And Revocation Of Detention Order And Memorandum In Support Thereof (Motion For Review) (docket no. 26), asking that he be released on his own recognizance, citing the Fifth and Eighth Amendments to the United States Constitution and the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* By Order (docket no. 28), dated April 16, 2010, I set Robinson's Motion For Review for hearing with other matters on April 21, 2010.

On April 20, 2010, the prosecution filed an Opposition To Defendant Robinson's Motion For Review And Revocation Of Detention Order And Memorandum In Support Thereof (docket no. 34). In its Opposition, the prosecution represented that it would not have an agent available to testify at the hearing on April 21, 2010, but would instead rely on information from the United States Probation Office and documents filed in this case. The prosecution also asserted that pre-trial release was not appropriate, because Robinson posed a flight risk and the prosecution did not believe that there were any conditions of release that would reasonably assure Robinson's presence in court. The primary grounds for continued detention offered by the prosecution were that Robinson does not recognize the authority of the court over him as an actual person and that Robinson appears to have no contacts in the District of the Northern Mariana Islands.

At the hearing on April 21, 2010, Robinson appeared with standby counsel and the prosecution appeared through a third Assistant United States Attorney. That prosecutor had also been present at the April 1, 2010, hearing, but he explained at the April 21, 2010, hearing that he had

who would later appear as "trial counsel" for Robinson's case. Transcript of Arraignment, April 1, 2010, at 2; Transcript Of April 21, 2010, Hearing On Motion For Review at 10:1–3.

only recently come on as "trial counsel." *See* Transcript Of April 21, 2010, Hearing On Motion For Review, 2:11–12 & 10:1–3; *see also* Transcript Of April 1, 2010, Arraignment (Part 2) at 2.

Robinson requested that the court take up the detention issue first, at which time, the following exchange occurred:

THE COURT: ... I'm going to start with the Government, because they have the burden. And technically, as I read—well, let me ask counsel for the Government, there's already been a detention hearing in this case; is that correct?

[THE TRIAL PROSECUTOR]: Your Honor, according to the notes, the Government has moved for detention during each appearance before the Court; March 22, March 29 and April 1st, and he's been remanded in custody each time, but I don't believe there was specifically a detention, a detention held. I don't know what the procedure was that was actually held prior to his extradition.

THE COURT: My understanding of the statute is you can't hold somebody without having had a detention hearing.

[THE TRIAL PROSECUTOR]: I believe there was, but I don't have a record thereof.

THE COURT: And the other thing that's troublesome to me is—it's been quite awhile since I've looked at this statute. I used to be a United States Magistrate Judge, so I did detention hearings almost every day, but that was 17 years ago now. But Title 18, 3142 requires that after a detention hearing, that there be a written Order entered, because if you read the section Title 18, 3142—I'm sorry. There are so many subsections. Let me see if I can get this right. "I"; I guess it's just subsection (i) talks about contents of a detention Order

In a detention Order issued under subsection (e) of this section, the judicial officer shall, one, include written findings of fact and written statements of the reasons for the detention.

So clearly, a written Order is required. I did review the file. I did not see a written Order.

[THE TRIAL PROSECUTOR]: Your Honor, there is no written Order docketed in this case.

THE COURT: Did the Government request that there be a written Order when he was detained?

[THE TRIAL PROSECUTOR]: Your Honor, there is no notes to that effect in the record, in the minutes. Merely, that the Government moved for no bail at this time and moved for detention.

I have to apologize, Your Honor. I came in this case late, so I wasn't present for those hearings.

THE COURT: Wouldn't the Assistant United States Attorneys who were present know the requirements of—these are basic requirements of Federal law; it's as basic as can be—what's the standard to detain somebody?

[THE TRIAL PROSECUTOR]: I believe at the first hearing, it may have been the initial appearance, there may have been an issue as to the defendant not acknowledging the report and subsequently refusing to enter a plea.

THE COURT: Well, Judge Wiseman entered a plea for him, which is what judges do when a defendant is unwilling or unable or recalcitrant or whatever. They—and there's no requirement that a defendant enter a plea. A Judge can enter a plea for him.

What does that have to do with not moving for a detention hearing under the statute and having a detention hearing and having the Judge issue a written Opinion?

[THE TRIAL PROSECUTOR]: Your Honor, I don't have an adequate answer to that.

THE COURT: Well, how long has Mr. Robinson been in custody, [THE TRIAL PROSECUTOR]?

[THE TRIAL PROSECUTOR]: Your Honor, his first appearance in this Court, his initial appearance would have been March 22nd, Your Honor.

THE COURT: So he's been held for a month without a detention hearing? Don't you have an obligation to promptly move for a full detention hearing?

[THE TRIAL PROSECUTOR]: Yes, Your Honor.

THE COURT: Well, did the U.S. Attorney's Office do that in this case?

DEFENDANT ROBINSON: Your Honor, if I may, I was arrested on January 26. I've been in custody since then, January 26.

THE COURT: As I understand it—I may be wrong because I'm very new to the file—you were arrested in the District of Columbia and probably had what I think was a Rule 20 hearing, an identity hearing.

DEFENDANT ROBINSON: Yes.

THE COURT: And I can only hold the U.S. Attorney's Office here responsible for what's happened after you were transferred here, and that's what I'm trying to inquire, but thank you for clarifying that, Mr. Robinson, because I did remember reading you were initially arrested on the indictment in the District of Columbia.

Mr. [Trial Prosecutor], here's what I'm concerned about: Hasn't your office violated the statute by not moving for a detention hearing promptly? I'm not finding it right in the statute, but as I recall, you have three days to move for a detention hearing.

And with all due respect, if you didn't follow the statute, how is it that Mr. Robinson has been properly detained?

Isn't it the responsibility of the U.S. Attorney's Office when somebody's liberty is at stake to make sure you follow the Congressional mandate of holding a detention hearing within three days?

And you know, it's not good enough that you're new to the case. I wouldn't expect that to be—I appreciate the fact that you're new, but I want to hold your office accountable for following Federal law, and you explain to me how it is that your office followed Federal law in this case. I'm willing to listen to any explanation, justification.

Your office doesn't understand the basic requirements of release and detention pending judicial proceedings?

Let me ask you an easier question. When were you going to move for a detention hearing? Ever? Or were you just going to try and hold the defendant detentionally unlawfully until his trial? Is that what you were going to do?

[THE TRIAL PROSECUTOR]: Your Honor, we have moved this Court previous to the proceedings to continue him in detention.

THE COURT: You can't continue detention. You have to have a detention hearing. You can continue it for three days is my understanding. It's now been, I think, 30 days.

So what's your explanation?

[THE TRIAL PROSECUTOR]: Your Honor, I don't have an explanation for why we did not move to have a detention hearing.

THE COURT: That's not good enough, Mr. [Trial Prosecutor].

[THE TRIAL PROSECUTOR]: Yes, Your Honor.

THE COURT: Whose responsibility in your office was it to move for a detention hearing?

[THE TRIAL PROSECUTOR]: It would have been the responsibility of the attorney assigned to the case. At the initial appearance, I believe that was [the original prosecutor]. It would have been my responsibility at the time that I was assigned to the case.

THE COURT: How long have you been assigned to the case?

[THE TRIAL PROSECUTOR]: Your Honor, I came on as trial counsel in this case approximately two weeks ago, so I'm at fault, as well, Your Honor.

THE COURT: When you came on two weeks ago, did you review the file to determine whether there had been a detention hearing and whether or not a Judge had filed a written detention Order stating the reasons why the defendant was being detained, as required by Title [sic] 3142?

[THE TRIAL PROSECUTOR]: No, Your Honor. I failed to do so.

Transcript Of April 21, 2010, Hearing On Motion For Review at 4:11–10:21.

After this exchange, the hearing turned to a very belated presentation of evidence to support the prosecution's request that Robinson be detained. The prosecution presented the testimony of a probation officer to the effect that she attempted to interview Robinson to prepare a bail report prior to his initial appearance, but Robinson gave her inconclusive information about the whereabouts of his passport and told her that he did not want to talk to her out of concern for creating "third-party risks." The probation officer also testified that she obtained information about Robinson's criminal records, but those records did not show any criminal convictions. She testified, further, that she had not been able to find that Robinson had any ties to the Island of Saipan.

*Id.* at 11–17. On cross-examination, Robinson was able to elicit testimony from the probation officer that Robinson was never hostile or combative during the probation officer's interview with him, that he requested that the probation officer verify that one of the charges shown in the pretrial report was not his, and that the probation officer did not know that Robinson had been raised in the Washington, D.C., area and had always resided there. *Id.* at 17–20.

The prosecution put on no other witnesses, but did offer four exhibits. Exhibits 1 through 3 were minutes of the March 22, 2010, March 29, 2010, and April 1, 2010, hearings, and Exhibit 4 was a copy of a document, filed by Robinson on April 12, 2010, as docket no. 22, entitled Demand to Move Surrender of Person and Defendant to the Custody of the District Court, evidence file, manufacturer's certificate of origin, the birth certificate, and bill of lading.

The prosecution argued that Robinson should be detained on the ground that he was a flight risk, in light of a charge that he was a fugitive from justice in 1998, albeit with no known disposition, and despite evidence that he was released after subsequent arrests in the same jurisdiction. The prosecution also argued that Robinson had refused to identify himself or talk to the probation officer after his transfer to Saipan and, in the April 1, 2010, hearing, he refused to enter a plea or recognize the authority of the court or the legitimacy of the proceedings. The prosecution argued that this "theme" of not recognizing the authority of the court suggested that Robinson would not appear for proceedings that he did not consider legitimate.

I then explained to Mr. Robinson that he was entitled to make a proffer concerning whether detention was appropriate, as well as to offer any argument he might

want to make on that issue. For his proffer, Mr. Robinson stated that he has repeatedly attempted to identify himself consistent with his "stance" that he is a real man, not a corporate being, and that he had a right to assert that he was kidnapped and his rights were violated, but that his positions did not translate into his being a flight risk. He also suggested matters in his criminal history in 1995 through 1998 were all essentially the same matter, but that there were no convictions at all in his record, and that he was acquitted of the 2003 charge. He also proffered that he had strong ties to the Washington, D.C., metropolitan area, where he has lived his entire life and has extensive family. He also proffered that he had worked with standby counsel and his family members to obtain some money for him to rent and live in an apartment in Saipan, if he was released, until resolution of this matter, so that he would have access to legal materials and a safe place to live. He also proffered that his passport could be promptly forwarded from Washington and turned over to the court, if required.

For his argument, Mr. Robinson asserted that it was inappropriate to translate his "stance" regarding his position before the court into a basis for detaining him, either as a danger to others or as a flight risk. He also represented that, if the court set dates for trial or hearings, he would "absolutely" appear for those proceedings and that he would comply with any other conditions of release, including reporting requirements. He also reiterated that he does not have a single criminal conviction and, indeed, has been acquitted on one of the charges appearing in his arrest record. He argued that he should be released on personal recognizance.

Standby counsel then offered further argument in support of Robinson's release from pretrial detention. Counsel argued that the prosecution had plainly not complied with the timeliness requirements of § 3142(f) in seeking a detention hearing and, instead, had allowed Robinson to be held in jail for one month without a detention hearing or written order for detention, which effectively precluded Robinson from appealing his detention. Counsel argued that detention should no longer be an issue; rather, the only issue was the question of bail. As to bail, counsel asserted that Robinson should be released on his own recognizance as at least a partial remedy for his unlawful detention. Counsel also argued that the prosecution's argument that Robinson was a flight risk was pure speculation with no supporting evidence. Counsel also argued that Robinson had more than sufficient ties to his own community, in Washington, D.C., to defeat the prosecution's burden to show that he is a flight risk. Finally, counsel argued that, if anything, Robinson's criminal history showed that he had complied with court orders and instructions.

The prosecution then conceded that, if Robinson could have his passport sent to Saipan, would have a known address in Saipan, and would submit to supervision of the court, then those circumstances made "a world of difference" as to whether or not Robinson was a flight risk.

I then had the following exchange with the prosecutor concerning the prosecution's failure to follow statutory requirements for Robinson's detention:

> THE COURT: ... But let's get back to why they're even arguing a remedy. I am beyond shocked at the Government's violation of Mr. Robinson's statutory rights to release here. I am shocked by it. I am beyond shocked by it, and I've asked you a number of times if you had any justification at all for the Government's failure to move for a detention, as required by Title 18, 3142, or request a three-day continuance and

then have a detention hearing, and you've either said nothing or kind of stammered. And do you have any—I want to know if you have any possible justification for what appears, to me, to be an egregious violation of Mr. Robinson's rights to be released.

[THE TRIAL PROSECUTOR]: Your Honor, I have no information, and without hammering or stammering or pausing, I was not present during that time—

THE COURT: I'm not saying you're personally responsible, but your office is.

[THE TRIAL PROSECUTOR]:—your court has—and I was admitted to the Bar-admitted to this Court about two weeks ago. I came onto this case April 12th, and this Court ordered this hearing April 15th.

That being said, I simply lack the knowledge to adequately explain. I don't know if there is an adequate explanation. I just simply am unprepared to give it to the Court. It's something I will address with my office, both with the branch chief here and with our First Assistant, and see if we have any reasonable explanation and see if we can offer that to the Court.

If the defendant surrenders his passport, as he's proffered, there's a known address and he will cooperate to the extent necessary to supervise him, I will withdraw my objection to his pretrial detention.

THE COURT: So after having him incarcerated for a month and failing to move for a hearing, you're no longer moving to detain him if he surrenders his passport?

[THE TRIAL PROSECUTOR]: Your Honor, if we have his passport, a known address, as opposed to no cooperation, and he's under the supervision of the Court, yes.

THE COURT: Okay. Thank you. I appreciate that. That's a very reasonable position to take, but I suspect having seriously violated his rights, that might have moved the Government to a more reasonable position. I don't know. That's for the executive branch of Government.

But here's what I'm going to—

[THE TRIAL PROSECUTOR]: Excuse me, Your Honor. I will state in my place that given these facts and given the history, I would make that recommendation with that information.

THE COURT: And I accept that.... Transcript Of Hearing On Motion For Review at 66:3–68:5.

Following this exchange, I ruled that there was absolutely no evidence in the record that would warrant detaining Robinson on the basis of a risk of flight or any other reason. Indeed, I stated that the prosecution had failed to produce anything like enough evidence to justify detaining him. I also opined that "given no justification whatsoever for the Government's actions, that they have seriously violated Mr. Robinson's rights to be released under Title 18, 3142 by failing to move for a timely detention hearing, and that they've waived their right to argue for the detention." *Id.* at 68:16–21. In the alternative, I held that, even if the prosecution had not waived its right to seek detention, it had produced no sufficient evidence to justify detention. I also stated, "There's simply no evidence. There's not a preponderance, there's not a scintilla, there's nada, zilch, zero, nothing, in my view, that would support he's a risk of—or a danger to the community." *Id.* at 69:7–11. Thus, I concluded, "So on both prongs on the merits, the Government has woefully failed to establish sufficient evidence to hold the defendant." *Id.* at 69:12–14. I stated that, had there not been "such an egregious

breach of the defendant's right to be released," I would probably have held Robinson for a few days, until after his passport arrived and his residence in Saipan was established, but that I would order his immediate release. *Id.* at 69.

The remainder of the hearing was devoted to working out the terms and conditions of Robinson's release and reporting, including an unsecured bond in the amount of $100,000, and adjusting Robinson's release date to allow him to stay in jail until he had somewhere else to go.[4]

### B. The Motion To Supplement The Record

#### 1. Grounds for the motion

On April 23, 2010, the prosecution filed its Request To Supplement The Record (docket no. 41), which is now before the court. In that filing, the prosecution states that it is *not* seeking reconsideration of my order releasing Robinson, but "requests the opportunity to supplement the record with the following facts, that may not have been known to the Court prior to or during the hearing on Defendant's Motion For Review And Revocation of Detention Order, held on April 21, 2010." Request To Supplement The Record (docket no. 41) at 1. The prosecution states the following as grounds for supplementing the record:

> Serious consequences may result from any allegation by the Court that an attorney for the Government violated any Constitutional or statutory right of the Defendant. Therefore, to the extent that the Court found that any member of the United States Attorney's Office had engaged in any misconduct, the Government respectfully requests that the Court now correct the record, in

light of the supplemental information here provided.

Request To Supplement The Record (docket no. 41) at 5–6.

#### 2. The proffered supplemental facts

The proffered supplemental facts are the following:

1. The Defendant had his Initial Appearance in the District on March 22, 2010, Designated Judge David A. Wiseman presiding. The Government was represented by AUSA [Original Prosecutor]. The Defendant did not have the assistance of a lawyer at the Initial Appearance. The issue of the Defendant's Detention was addressed at his Initial Appearance. At the time, the Defendant refused to identify himself, or to cooperate with the U.S. Probation Office. He continually interrupted the Court. He spoke cryptically about his lien against the United States, and how the United States was "trespassing on that lien." AUSA [Original Prosecutor] moved that the Defendant be detained without bail at that time, citing the Defendant's lack of ties to the community, and his being a flight risk. The Court accepted the recommendation of the Government, based additionally on information from the Probation Office revealing the Defendant has "a history of criminal actions and dispositions that are unknown going back to 1992," including a firearm violation, receipt of stolen property, murder in the first degree, fugitive from justice, controlled substance violations, and assault. The Defendant conceded that

---

4. This request from Robinson to remain in jail until he had worked out arrangements to live somewhere else was not intended to be, and cannot be construed as, a waiver of his contention that his detention had been unlawful. It was, instead, the result of necessity, where he had nowhere else to live in the interim.

he had no ties to the community, but offered that he was not a danger to the community. The Defendant argued that he was not a flight risk because "I don't own an airplane or boat." The Defendant also argued that he had never been convicted of "not one crime ever." The Court found that the Defendant was not a danger to the community, but that he was a flight risk. The Court ordered that the Defendant be held without bail. The Court's findings were not reduced to writing, as required by 18 U.S.C. § 3142(i)(1).

2. The Defendant was arraigned on March 29, 2010, Designated Judge David A. Wiseman presiding. The Government was represented by AUSA [Substitute Prosecutor]. The Defendant had the assistance of CJA stand-by counsel Timothy H. Bellas. The Defendant was again admonished about interrupting the Court, and accused the Court of "treason" and "being a co-conspirator and a party to a criminal act." The Government moved for the continued detention of the Defendant, and stated as follows:

The defendant is in detention right now, and it's my understanding that the Government had moved in the Mainland, and also with the last appearance before Your Honor, to keep the defendant detained, and I just want to make sure that the record is clear that the Government has moved for detention and that Order has been granted. . . .

The Defendant argued that other inmates at the Department of Corrections were released on weekend passes, and asked the Court to allow him to be released at certain times during the week to go to the library. The Defendant also reiterated that the crimes he is accused of are not crimes of violence. The Court maintained its no-bail order, based on the flight risk that is "inherently involved in this case," and advised the Defendant that the modification of bail could be taken up at a later time by the Defendant or his attorney. The Court then continued the arraignment to April 1, 2010.

3. The Defendant's continued arraignment occurred on April 1, 2010, Designated Judge David A. Wiseman presiding. The Government was represented by AUSA [Original Prosecutor]. The Defendant was assisted by CJA stand-by counsel Timothy H. Bellas. Defendant told the Court he had fired his counsel, and wished to represent himself. The Defendant addressed the Court as to what he felt his rights were, and how the hearing should proceed, but refused to plead either guilty or not guilty. The Court described Defendant's behavior towards the Court as "combative," and warned that Defendant might be held in contempt. The Court entered a not guilty plea on behalf of the Defendant. The Defendant then handed the Indictment back to AUSA O'Malley with the words, "Accepted for Value Exempt from Levy Returned For Discharge Settlent [sic] and Closure. HJR192 of 1933 by Kent S. Robinson Authorized Agent" which AUSA [Original Prosecutor] then read into the record. The Government moved for the Defendant to be remanded back into custody, and the judge so ordered.

4. AUSA [Trial Prosecutor] from the U.S. Attorney's Office in Guam entered an appearance in this case on April 12, 2010.

5. A hearing was held on Defendant's Motion For Review and Revocation of Detention Order on April 21, 2010. Defendant's CJA stand-by counsel mistakenly argued that the Defendant had not had a detention hearing.

Request To Supplement The Record (docket no. 41) at 5–6 (footnotes omitted).

## II. LEGAL ANALYSIS

The questions raised by the prosecution's Request To Supplement The Record are the following: (1) Should supplementation of the record be allowed? (2) If supplementation is allowed, was any of the proffered supplemental information unknown to me at the time of the April 21, 2010, hearing? (3) Is all of the supplemental information true? and (4) Would any of it have made any difference to my ruling on Robinson's detention or to my comments about the performance of the prosecution? The answers, as more fully explained below, are that supplementation should be allowed; some of the proffered supplemental information was unknown to me at the time of the April 21, 2010, hearing; some of it is true, but some of it is not; and none of it is relevant to my ruling on Robinson's detention or to my comments about the performance of the prosecution or, if it is relevant, it ultimately changes nothing.

### A. "Supplementation" Of The Record

The prosecution's motion is, in the first instance, a motion to supplement the record. The prosecution cites no standards for such a motion. The prosecution does, however, assert that the proffered facts may not have been known to me at the time of the April 21, 2010, hearing. The prosecution also suggests that I may wish to make corrections in light of the supplemental information. Thus, I must first consider what standards apply to a motion to supplement the record.

### 1. Standards for "supplementation" of the record

There is scant case law from the Ninth Circuit Court of Appeals concerning standards for supplementation of the record. About a decade ago, in the context of determining whether the prosecution should be allowed to supplement the record, on remand for resentencing, to try to show that a defendant was an armed career criminal, a panel of the Ninth Circuit Court of Appeals held that the defendant was to be resentenced on the existing record. *See United States v. Matthews*, 240 F.3d 806, 821 (9th Cir.2000). The court went on to suggest that, "[i]n those cases where the government demonstrates a persuasive reason why fairness so requires, this court has the discretion to permit the government to introduce the omitted evidence on remand; where the record is unclear, we may remand with instructions to the district court to permit the government to supplement the record only if it makes the requisite showing in the district court." *Id.* (citing *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir.1995), which stated that when the prosecution fails to meets its burden of persuasion or production, "its case should ordinarily have to stand or fall on the record it makes the first time around" but allowing an exception because the government "tendered a persuasive reason why fairness so requires"). Thus, the Ninth Circuit Court of Appeals appeared to recognize a "when fairness so requires" standard for supplementation of the record, at least in the context of supplementation of the record on remand for resentencing.

Unfortunately, in a subsequent *en banc* decision in *Matthews*, the Ninth Circuit Court of Appeals reversed the panel decision to hold that, as a general matter, if a district court errs in sentencing, the resentencing on remand should be on an "open"

record, with no limitation on the sentencing court's ability to consider evidence beyond the existing record. *See United States v. Matthews*, 278 F.3d 880, 885 (9th Cir.2002) (*en banc*) (but noting that the appellate court could so limit the issues on remand that new evidence would not be relevant). Thus, the *Matthews* decisions do not stand for a general adoption of a "when fairness requires" standard for supplementation of the record in criminal cases.

▮ Other Circuit Courts of Appeals do appear to adopt a general "when fairness or justice requires" standard for supplementation of the record in criminal cases. *See, e.g., United States v. Gabaldon*, 522 F.3d 1121, 1125 n. 3 (10th Cir.2008) (applying a standard considering whether the interests of justice would be best served by exercising the court's inherent equitable power to allow a party to supplement the record); *Von Kahl v. United States*, 242 F.3d 783, 788 (8th Cir.2001) (considering whether, in the interests of justice, the court should allow a supplement to the record and consider the supplemental evidence, tempering that consideration with whether the lack of such evidence in the existing record was owing to lack of diligence on the part of the moving party); *United States v. Cannistraro*, 871 F.2d 1210, 1216 (3d Cir.1989) (considering whether "the just course of action" was to vacate the court's prior order and to permit the aggrieved party to supplement the record); *United States v. Rexach*, 482 F.2d 10, 18 (1st Cir.1973) (leaving to the district court the determination of whether, in fairness, a party should be allowed to supplement the record on remand). Indeed, I cannot find that any federal appellate court has applied any other standard. Moreover, basing a decision on whether or not to allow supplementation of the record on whether the interests of justice or fairness require such supplementation makes sense, when, as explained below, the court

otherwise has the inherent power to reconsider its rulings. *See, e.g., United States v. Barragan–Mendoza*, 174 F.3d 1024, 1028 (9th Cir.1999).

Therefore, in the absence of any argument for or discovery of any authority supporting a different standard, I will consider whether the interests of justice or fairness require supplementation of the record in this case.

*2. Whether supplementation is appropriate*

▮ Here, I find no reason, and the prosecution has articulated none, for the prosecution's failure to apprise me at the April 21, 2010, hearing of the information offered in the prosecution's Request To Supplement The Record. *See, e.g., Von Kahl*, 242 F.3d at 788 (considering whether, in the interests of justice, the court should allow a supplement to the record and consider the supplemental evidence, tempering that consideration with whether the lack of such evidence in the existing record was owing to lack of diligence on the part of the moving party). Although the prosecution may not have had transcripts of the March 22, March 29, or April 1 proceedings before the April 21 hearing, prosecutors certainly had been present at those hearings, had access to the minutes of those proceedings, and could have apprised me of the information from those proceedings that the prosecution now asserts was relevant.

Nevertheless, I find that, where the prosecution believes that it has been unfairly criticized concerning its conduct in proceedings leading to the detention of a criminal defendant—and, more particularly, where the prosecution has been accused of violating a criminal defendant's statutory and constitutional rights—fairness and justice warrant allowing the prosecution to supplement the record with information

that it believes is relevant. Therefore, to the extent that the prosecution asks to supplement the record with the proffered information, that request will be granted, and I will consider the supplemental information.

### 3. The effect of the supplemental information

Because I will consider the proffered supplemental information, it is appropriate to note here whether or not I knew of that information at the time of the April 21, 2010, hearing, whether or not it is true, and, at least briefly, what effect that supplemental information would likely have had, had I known it at the time of the April 21, 2010, hearing. *See* Prosecution's Request To Supplement The Record (docket no. 41) (asserting that the court may not have known of the information presented in the Supplement prior to or during the hearing on April 21, 2010).

The information in paragraphs 1, 2, and 3 of the Request To Supplement The Record concerns what occurred in the March 22, March 29, and April 1 proceedings. The supplemental information about those proceedings in those paragraphs, other than what could be gleaned from the hearing minutes for those proceedings, was generally unknown to me at the time of the April 21, 2010, hearing, because I did not then have transcripts of those proceedings. The full transcripts of those proceedings, which I have now received, either as attachments to the prosecution's Request To Supplement The Record or from the court reporter, and from which I have quoted pertinent portions above, demonstrate that the prosecution's statements about those proceedings are essentially accurate.

However, what the hearing minutes for those proceedings—and the docket in its entirety—showed me prior to the April 21, 2010, hearing was that the prosecution had requested or reiterated a request for "no bail," and the court had granted those requests, but there was no indication that an actual detention hearing, or even proffers supporting release or detention, had been made, and no written detention order had been entered. *See* Hearing Minutes for March 22, 2010 (docket no. 3) ("Government moved for 'no bail' at this time. Court so ordered."); Hearing Minutes for March 29, 2010 (docket no. 4) ("Government moved for the defendant to remain in detention. Court so ordered. Court remanded the defendant back into the custody of the U.S. Marshal."); Hearing Minutes for April 1, 2010 (docket no. 6) ("Government moved that the defendant be remanded back into custody. Court remanded the defendant back into the custody of the U.S. Marshal."). Nothing in the supplemental information in paragraphs 1 through 3 changes those insufficiencies or requires me to retract or correct any statement that I made in the course of the April 21, 2010, hearing about the conduct of the prosecution in this case.

Turning to paragraph 4 of the Request To Supplement The Record, I had notice of the trial prosecutor's appearance on April 12, 2010, because his appearance is in the record at docket no. 19, but I cannot say that I actually knew when he appeared in the proceedings prior to the hearing on April 21, 2010. I note that it now appears that the trial prosecutor's assertion during the April 21, 2010, hearing that he had only been in the case for about two weeks was not strictly true, because the transcript of the April 1, 2010, arraignment proceedings, which I obtained from the court reporter, shows that he was present with the original prosecutor at the April 1, 2010, hearing. When the trial prosecutor appeared, of course, has no bearing on the correctness of my observations about the conduct of the prosecution in this case with regard to Robinson's detention.

As to paragraph 5 of the Supplement, it is ridiculous for the prosecution to characterize the information about the April 21, 2010, hearing as unknown to me at the time of the April 21, 2010, hearing, because I presided at that hearing. Of more concern, however, is the prosecution's assertion in paragraph 5 that standby counsel was mistaken when he asserted that Robinson never had a detention hearing, because, for the reasons stated below, standby counsel was correct: Robinson simply never had a detention hearing until April 21, 2010. Thus, I find that the second sentence of paragraph 5 of the Supplement is simply untrue.

Still more importantly, for the reasons set forth below, all of the information in the Request To Supplement The Record is irrelevant to my ruling on Robinson's detention or to my comments about the performance of the prosecution or, if it is somehow relevant, it ultimately changes nothing.

### B. "Correction" Of Findings

Although the prosecution asserts that it is not seeking reconsideration of my ruling on Robinson's detention, the prosecution does ask me to "correct the record, in light of the supplemental information here provided." Request To Supplement The Record (docket no. 41) at 5–6. Thus, at the very least, the prosecution asks me to reconsider certain findings that I made concerning the conduct of the prosecution in this case in the course of determining that Robinson could not be and had not been properly detained.

### 1. Standards for "correction" or reconsideration

The Ninth Circuit Court of Appeals has observed that "generally district courts do have 'inherent authority' to decide motions for reconsideration or rehearing of orders in criminal proceedings, even when there is no statute authorizing such motions."

*United States v. Barragan–Mendoza,* 174 F.3d 1024, 1028 (9th Cir.1999); *accord United States v. Aguirre,* 214 F.3d 1122, 1124 (9th Cir.2000) ("[D]istrict courts generally have 'inherent authority' to decide motions for reconsideration and rehearing of orders in criminal proceedings," but 18 U.S.C. § 3582 expressly limits the court's authority to reconsider sentencing decisions), *cert. denied,* 531 U.S. 970, 121 S.Ct. 408, 148 L.Ed.2d 315 (2000); *see also United States v. Breit,* 754 F.2d 526, 530 (4th Cir.1985) ("The general rule at common law in both civil and criminal cases was that a court could modify, vacate, or set aside orders previously entered by that court through mistake or inadvertence provided, however, such reconsideration occurred in the term of court during which the orders were made. A more recent interpretation of this general common-law rule in the criminal context provides that despite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders.") (citations omitted); *United States v. LoRusso,* 695 F.2d 45, 53 (2d Cir.1982) ("[W]hether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.") (internal quotation marks omitted), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983).

■ The "law of the case" doctrine also stands as no impediment to such reconsideration. *United States v. Smith,* 389 F.3d 944, 948–49 (9th Cir.2004) ("The law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction."). Even if

the "law of the case" doctrine were applicable, "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997).

Therefore, I certainly have the power to reconsider the findings about the prosecution's conduct with which the prosecution takes issue.

### 2. Whether any correction is required

██ The prosecution seems to suggest that certain findings I made concerning the prosecution's conduct in this case were either "clearly erroneous" in light of the supplemental information the prosecution now provides or, at least, that a "manifest injustice" would result, if I did not reconsider those findings in light of more complete information. *See Alexander*, 106 F.3d at 876 (identifying circumstances in which the court may depart from the "law of the case" to revise prior findings or conclusions). I simply find nothing in the supplemental information offered by the prosecution that requires me to retreat one inch from my comments about or my assessment of the prosecution's conduct with regard to Robinson's detention. Thus, I do not find that I have committed any "clear error" or imposed a "manifest injustice." Rather, for the reasons stated below, I now reiterate that the prosecution clearly failed to comply with 18 U.S.C. § 3142 and, thus, clearly violated Robinson's statutory and constitutional rights.

### a. The Bail Reform Act's requirements

██ As the Ninth Circuit Court of Appeals recently explained,

The Bail Reform Act governs the detention of a defendant pending trial. 18 U.S.C. § 3142 (2006). *The Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."* 18 U.S.C. § 3142(e).

*United States v. Hir*, 517 F.3d 1081, 1085–86 (9th Cir.2008) (emphasis added). The right to release pending trial, absent a sufficient contrary showing, is not simply a matter of statutory law, but a matter of a defendant's Fifth and Eighth Amendment rights. *See id.* at 1086 (explaining that a reviewing court must ensure that a pretrial detention order is " 'consistent with the defendant's constitutional and statutory rights,' " quoting *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990), and citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir.1985), as explaining that "[t]he Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected").

The Bail Reform Act establishes the requirements for release or detention of a defendant pending trial in 18 U.S.C. § 3142. Although I am tempted to quote that provision in its entirety here, in part because it appears to me that there is a shocking lack of familiarity with its terms and requirements in the United States Attorney's Office for the District of the Northern Mariana Islands, I will, instead, note here only the most pertinent parts of the statute, assuming that conscientious prosecutors will familiarize themselves with the provision in its entirety.

██ As the Ninth Circuit Court of Appeals has explained,

According to 18 U.S.C. § 3142(a), the district court has four options regarding whether to release or detain a defendant pending trial. The court must order that the person be: (1) released on personal recognizance or an unsecured appearance bond; (2) released on conditions that are determined to be the least restrictive conditions that will reasonably assure the defendant's appearance and the safety of the community; (3) temporarily detained to permit revocation of release, deportation or exclusion; or (4) detained pending trial.

*United States v. Fidler*, 419 F.3d 1026, 1027–28 (9th Cir.2005).[5] Subsections (b), (c), (d), and (e) then specify the circumstances under which each of these four alternatives, respectively, is appropriate. *See* 18 U.S.C. § 3142(b)-(e).

■ Although the statute permits a defendant to be released or detained, "from a procedural standpoint the two circumstances are quite different." *Fidler*, 419 F.3d at 1028. This is so, for the following reason:

> Section 3142(c), which governs the procedures for issuing a release order, does not direct that a full hearing following

the guidelines set out in § 3142(f) be held either before or after the release order is issued. *By way of contrast, § 3142(e), which governs the procedures for issuing [a] detention order, explicitly requires a detention hearing to be held "pursuant to the provisions of [§ 3142(f) ]."*

*Fidler*, 419 F.3d at 1028 (emphasis added).[6] Thus, before Robinson could be detained, a detention hearing was *required.*

Moreover, such a detention hearing must ordinarily occur at the defendant's first appearance before a judicial officer. 18 U.S.C. § 3142(f) ("The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance"). In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, § 3142(g) identifies factors that the judicial officer is to take into account, including "the nature and circumstances of the offense charged"; "the weight of the evidence against the person"; "the history and characteristics of the per-

---

5. More specifically, § 3142(a) provides as follows:

> (a) **In general.**—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—
> (1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
> (2) released on a condition or combination of conditions under subsection (c) of this section;
> (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or
> (4) detained under subsection (e) of this section.

18 U.S.C. § 3142(a).

6. Section 3142(e), concerning "detention," provides, in pertinent part, as follows:

> (e) **Detention.**—(1) If, *after a hearing pursuant to the provisions of subsection (f) of this section,* the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(3)(1) (emphasis added). Further provisions of subsection (e) are not applicable here, because they pertain to rebuttable presumptions that conditions of release will be inadequate for persons charged with offenses not at issue here. *See* 18 U.S.C. § 3142(e)(2)-(3).

son," including, *inter alia,* his "community ties"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Finally, at least for present purposes, § 3142(i)(1) requires that a detention order, unlike a release order, must "include written findings of fact and a written statement of reasons for detention." 18 U.S.C. § 3142(i)(1); *see also United States v. Koenig,* 912 F.2d 1190, 1192 (9th Cir.1990).

### b. The failure to satisfy § 3142 requirements

Nothing in the prosecution's proffered supplemental information changes my view that the court and the prosecution failed to satisfy the conditions of § 3142 for Robinson's detention. The failings, as I enumerated them at the hearing, include at least the following: (1) failure to afford Robinson a "detention hearing" within the meaning of 18 U.S.C. § 3142(f), as required by 18 U.S.C. § 3142(e); (2) failure to afford Robinson a timely detention hearing, as required by 18 U.S.C. § 3142(f); and (3) failure to ensure that Robinson's detention was memorialized in written findings and a written statement of reasons, as required by 18 U.S.C. § 3142(f). I will consider each of these failings in turn.

### ██ i. The "detention hearing" requirement.

Not only is a detention hearing generally required by 18 U.S.C. § 3142(e) before a defendant can be detained, but more specifically still, a detention hearing was *required* in this case, because the prosecution moved for detention on the ground that Robinson was a flight risk. *See* 18 U.S.C. § 3142(e)(2)(A) ("The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community," *inter alia,*

"[u]pon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves ... a serious risk that such person will flee."). "The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986). Because the prosecution has not sought reconsideration of my conclusion that Robinson is *not* a flight risk, the focus now is on whether or not Robinson was afforded a "detention hearing" to determine whether or not he was a flight risk, not whether the designated judge's finding that he is a flight risk, or my contrary finding that he is not, is correct, and I will not revisit those issues. What I will revisit is whether the prosecution failed to move for and whether Robinson ever had a detention hearing, as required by § 3142(e)(2)(A).

The prosecution asserts, in paragraph 5 of its Request To Supplement The Record, that "Defendant's CJA stand-by counsel mistakenly argued that the Defendant had not had a detention hearing." It is plainly the prosecution, not standby counsel, that is mistaken.

First, the record—either before or after supplementation—shows that the prosecution moved to detain Robinson or to continue his detention in each of the proceedings prior to April 21, 2010. However, it is equally clear from the supplemented record, as it was from what I knew as of April 21, 2010, that the prosecution never sought a detention hearing, as required by § 3142(e)(2)(A), when the prosecution moved for detention on the ground that the defendant was a flight risk. An oral request or motion that the defendant be detained, in the course of an initial appearance, is a far cry from a request for a detention hearing or notice to the court of

the necessity of a detention hearing in light of the asserted grounds for detention.

Second, if anything, the supplemented record demonstrates *more clearly* than the information known to me as of April 21, 2010, that Robinson never had a "detention hearing" within the meaning of § 3142(f). Section 3142(f) describes the required "detention hearing" as follows:

At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. *The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.* The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added).

Contrary to the prosecution's assertion in its Request To Supplement The Record, and consistent with Robinson's standby counsel's assertion at the April 21, 2010, hearing, Robinson never had such a

"detention hearing" within the meaning of § 3142(f). As the italicized language of § 3142(f) quoted above indicates, in a detention hearing, the defendant must be "afforded the opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). Certainly, nothing in the transcript from Robinson's initial appearance on March 22, 2010, indicates that he was ever afforded such opportunities—indeed, the court never so much as asked Robinson if he had any response to the prosecution's purported grounds for labeling him a flight risk before accepting the prosecution's recommendation that he be detained. *See* Transcript of March 22, 2010, Initial Appearance at 14:8–24. Instead, at the end of the initial appearance, the court asked only whether Robinson had "any questions about being remanded into custody [or] the bail...." *Id.* at 21:24–25. In response to that question, Robinson did assert that he was not a flight risk, because he does not "own an airplane or boat." *Id.* at 22:2–4. The opportunity to make such a response (taken by Robinson, not "afforded" to him by the court), cannot reasonably be construed to be the opportunity to make an adequate "proffer" in response to the prosecution's allegations that Robinson is a flight risk. *See* 18 U.S.C. § 3142(f) (permitting the defendant "to present information by proffer or otherwise" to resist a motion for detention).

■ It is true that, more than two decades ago, the Ninth Circuit Court of Appeals held that § 3142(f) does not require that the defendant be allowed to cross-examine government investigators and police officers who were involved in the investigation and arrest to demonstrate that he was arrested without probable cause.

*See Winsor,* 785 F.2d at 756. Rather, "the government may proceed in a detention hearing by proffer or hearsay," and "[t]he accused has no right to cross-examine adverse witnesses who have not been called to testify." *Id.* Nevertheless, the prosecution did not make anything recognizable to me as a "proffer" of evidence that Robinson was a flight risk, and instead, simply asserted that he was a flight risk because he had "absolutely no ties to this community" and had already made one motion to move this trial back to the District of Columbia. *See* Transcript of March 22, 2010, Initial Appearance at 14:2–7. Nothing about those statements amounts to a "proffer" of anything, for example, because no information was offered to support either allegation.

 Also, as noted above, the prosecution's argument about "ties to this community" misapprehends applicable law, which for twenty years has defined "community ties" under 18 U.S.C. § 3142(g), in the context of a defendant's risk of flight, to "embrace[ ] both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *Townsend,* 897 F.2d at 995; *see also Hir,* 517 F.3d at 1088 n. 4 (citing *Townsend* for this proposition). Again, any exploration of the issue would have revealed Robinson's extensive and longstanding ties to the Washington, D.C., community.

Moreover, the circumstances here differ from those in *Winsor.* In *Winsor,* the court held that, without a proffer from the defendant that the prosecution's proffered information was incorrect, the presiding judge was not required to allow Winsor to cross-examine anyone. *See Winsor,* 785 F.2d at 757. In contrast, here, Robinson *did* make a "proffer"—or at least a counter contention—that he was not a flight risk, with a statement of facts supporting that counter contention—his lack of a boat or airplane that would allow him to leave the island. Robinson's proffer challenging the correctness of the prosecution's position, thus, triggered a duty on the part of the court (and, for that matter, the prosecution) to allow Robinson a further opportunity to contest the prosecution's position. *Cf. id.* (where the defendant does not make a counter-proffer, the court was not required to allow him to attempt to impeach the prosecution's evidence).

Robinson simply was not given an opportunity to contest the factual basis, if any, for the prosecution's assertion that he was a flight risk, so no "detention hearing" within the meaning of § 3142(f) occurred at Robinson's initial appearance. Thus, as I stated at the April 21, 2010, hearing, the prosecution violated Robinson's rights by allowing him to be detained for at least thirty days from March 22, 2010, without a request by the prosecution for a detention hearing and without any such detention hearing.

*ii. The "timeliness" requirement.* As noted above, the required detention hearing must ordinarily occur at a defendant's first appearance before a judicial officer. 18 U.S.C. § 3142(f) ("The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday). During a continuance, such person shall be detained, and the judicial officer, on motion of the attorney for the Government or sua sponte, may order that, while in custody, a person who appears to be a narcotics

addict receive a medical examination to determine whether such person is an addict."). The Ninth Circuit Court of Appeals has recognized that the language of § 3142(f) allows for only one exception to the requirement that a detention hearing be held immediately upon the person's first appearance before the judicial officer: "a brief continuance under prescribed circumstances," which in the case of a continuance motion by the prosecution, "may not exceed three days." *United States v. Molinaro,* 876 F.2d 1432, 1433 (9th Cir. 1989) (*per curiam*).

Here, where the prosecution offered at Robinson's initial appearance a ground for detention that required a detention hearing pursuant to 18 U.S.C. § 3142(e)(2)(A), a flight risk, if the prosecution was not prepared to proceed immediately to the required detention hearing, the prosecution could and should have moved for a three-day continuance for a detention hearing. *See* 18 U.S.C. § 3142(f); *Molinaro,* 876 F.2d at 1433. However, where no "detention hearing" occurred at the time of Robinson's initial appearance, and the prosecution never moved for a continuance, no timely "detention hearing" ever occurred. Instead, as I stated at the April 21, 2010, hearing, the prosecution allowed Robinson to remain in detention for at least thirty days after March 22, 2010, without a detention hearing. Therefore, as I stated at the April 21, 2010, hearing, the prosecution violated Robinson's rights by allowing him to be detained for at least thirty days from March 22, 2010, without a timely (or even untimely) detention hearing.

*iii. The "written order" requirement.* Finally, § 3142(i)(1) provides that a detention order, unlike a release order, must "include written findings of fact and a written statement of reasons for detention." 18 U.S.C. § 3142(i)(1); *see also Koenig,* 912 F.2d at 1192. In its Request

To Supplement The Record, the prosecution concedes, as it must, that "the Court's findings [at the March 22, 2010, initial appearance] were not reduced to writing, as required by 18 U.S.C. § 3142(i)(1)." Request To Supplement The Record at 3, ¶ 1. Similarly, to the extent that the prosecution managed to get the designated judge to reiterate Robinson's detention as a flight risk at the arraignment proceedings on March 29, 2010, and April 1, 2010, those reiterations also were not followed with a written order for Robinson's detention. The prosecution, which should have been aware of the requirement of a written order, did nothing to remedy that deficiency.

Therefore, as I stated at the April 21, 2010, hearing, the prosecution violated Robinson's statutory and constitutional rights by allowing him to be detained for at least thirty days from March 22, 2010, without a written detention order.

### c. Why the onus was on the prosecution

█ The deficiencies in Robinson's detention beg the question of why the onus was on the prosecution to remedy those deficiencies. The answer is simple: Prosecutors are obliged to seek justice and to protect the rights of all people, including criminal defendants, not simply to win convictions. As Justice Sutherland explained so eloquently some seventy-five years ago,

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suf-

fer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *see also Arizona v. Youngblood,* 488 U.S. 51, 64 n. 2, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (noting that "[t]he prosecutor is 'the "servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." ' " quoting *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), in turn quoting *Berger,* 295 U.S. at 88, 55 S.Ct. 629); *Hayes v. Brown,* 399 F.3d 972, 978 (9th Cir.2005) (" 'The prosecuting attorney represents a sovereign whose obligation is to govern impartially and whose interest in a particular case is not necessarily to win, but to do justice.... It is the sworn duty of the prosecutor to assure that the defendant has a fair and impartial trial,' " quoting *Commonwealth of the Northern Mariana Islands v. Mendiola,* 976 F.2d 475, 486 (9th Cir.1992) (citations omitted), *overruled on other grounds by George v. Camacho,* 119 F.3d 1393 (9th Cir.1997) (*en banc* )). That obligation extends to "ensuring the integrity of our criminal justice system." *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

These obligations are also reflected in the Mission Statement of the United States Department of Justice:

> To enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; *and to ensure fair and impartial administration of justice for all Americans.*

*See, e.g.,* United States Department of Justice, "Mission Statement" (published at www.usdoj.gov/02organizations/) (emphasis added).

"Holding the prosecution to a higher standard is necessary, lest the 'special significance to the prosecutor's obligation to serve the cause of justice' be lost." *Youngblood,* 488 U.S. at 64 n. 2, 109 S.Ct. 333. Edmund Burke said, "Bad laws are the worst sort of tyranny," [7] but perhaps just as bad is the failure of the Department of Justice to follow good laws.

Here, the prosecution failed in its duty to do justice and to ensure the integrity of the criminal justice system when it failed to ensure that Robinson's detention was the result of full compliance with 18 U.S.C. § 3142. That obligation was of paramount importance in circumstances in which the defendant was representing himself and the presiding judge was not a United States district court judge or United States magistrate judge who could be expected to be thoroughly familiar with the requirements of the Bail Reform Act. In other words, the only party in the room with expertise in federal criminal procedure was the prosecution, and the prosecution failed to act to achieve compliance with the requirements of 18 U.S.C. § 3142. For the prosecution to fail to insist on scrupulous adherence to the requirements of 18 U.S.C. § 3142 in these circumstances, whether from negligence or from an intent to take advantage of the situation to obtain the defendant's detention, was inexcusable. Unfortunately, these series of missteps by the United States Attorney's Office calls to mind one of the most

7. *see, e.g.,* www.brainyquote.com/quotes/ authors/e/edmund_burke.html.

unfortunate remarks attributed to J. Edgar Hoover, "Justice is incidental to law and order." [8] Hoover's comment states a proposition that hopefully all who work in the nation's federal criminal justice system would now soundly reject. Yet, Robinson's experience suggests the disappointing truth of the observation that "[j]ustice is open to all, like the Ritz Hotel." [9]

Therefore, once again, nothing in the supplemented record requires me to retreat from my statements at the April 21, 2010, hearing that the prosecution violated Robinson's statutory and constitutional rights by allowing him to be detained for at least thirty days without a detention hearing or a written detention order.

### III. CONCLUSION

The interests of justice and fairness require that the prosecution be allowed to supplement the record with the information that the prosecution believes is pertinent to the correctness of my criticisms of the prosecution's conduct in Robinson's detention and that I consider the supplemental information. That said, nothing in the supplemental information provided here requires me to correct any findings or statements regarding the prosecution's conduct. In light of the supplemental information I am, if anything, *more* shocked at the prosecution's disregard of Robinson's statutory and constitutional rights in the proceedings leading to his improper pretrial detention. It is unconscionable that any criminal defendant in a federal prosecution in the United States be held in pretrial detention for some thirty days without a proper detention hearing and proper detention order. The prosecution, which is under a duty to do justice and to ensure the integrity of the criminal justice system, had an obligation to ensure that defendant Robinson's statutory and constitutional rights were not trampled in the course of proceedings leading to his detention. The prosecution failed to meet that obligation here.

Dr. Martin Luther King, Jr., noted that "[t]he moral arc of the universe is long, but it bends towards justice." [10] Unfortunately, it does not bend on its own. It bends towards justice, because all of us in our civil and criminal justice system have the ability to place our hands on the arc and direct it that way. That did not happen here. The arc, in my view, snapped sharply towards injustice to Mr. Robinson. Nevertheless, having found that injustice here, I want to make clear that I do not find any bad faith or intentional misconduct by the U.S. Attorney's Office. To a person, I found each Assistant U.S. Attorney I dealt with in the District of the Northern Mariana Islands to be of exceptional good faith, highly professional, and with a surprisingly strong sense of and passion for justice and fairness. While the wheels of justice came to a screeching halt here for Mr. Robinson, I find it was due to a cataclysmic and shocking concurrence of gross inadvertence, negligence, and ignorance of the law, but *not* intentional misconduct.

8. *See* J. Conlin, The Morrow Book of Quotations in American History 148 (1984) (attributed to Hoover without further source).

9. This aphorism is variously attributed to Sir James Mathew, *see* Nevada Supreme Court Gender Bias Task Force, Justice for Women (1989), 17, remarks of an unnamed British justice, *see* Josh Ard, *Serving Over The Net: Legal Education Over the Internet*, 79 Mich.

B.J. 1050, 1051 (2000), and Judge Sturgess, *see* Lawrence Taylor and Steven Oberman, Drunk Driving Defense, (Aspen: 2009 Cumulative Supplement) 45

10. Speech in Front of the Alabama State Capitol (Mar.1965), quoted in David Treadwell, *Martin Luther King, Jr., Two Decades Later: The Dictum, The Reality*, L.A. TIMES, Mar. 27, 1988, at A1.

THEREFORE, the prosecution's April 23, 2010, Request To Supplement The Record (docket no. 41) is **granted,** to the extent that the prosecution asks to supplement the record with proffered information, and to the extent that I have considered the supplemental information, but **denied** as to the prosecution's request that, in light of the supplemental information, I correct the record or any findings or conclusions I made concerning the conduct of the prosecution with regard to defendant Robinson's pretrial detention.

**IT IS SO ORDERED.**